*Decision will be entered under Rule 50.*

CONNORS-WEYMAN STEEL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CONNORS STEEL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 11240, 11242.    Promulgated June 9, 1931.

*J. Robert Sherrod, Esq.,* for the petitioners.
*L. W. Creason, Esq.,* for the respondent.

OPINION.

TRAMMELL: With respect to the issue relating to the allowance of an additional amount to the Connors Steel Company for depreciation, it is contended and we have so found as a fact, that the Woodlawn plant and equipment had a fair market value of $225,000 at January 1, 1918, when transferred to the company for stock. In support of the contention the testimony of four well qualified witnesses, including Connors, was offered. All of the witnesses were familiar with the plant, two of them having been acquainted with it from the time it was originally constructed by the Bullard Car Door Company. These witnesses testified to values for the plant at January 1, 1918, ranging from $202,400 to $350,000. The opinions of these witnesses as to the values testified to were not contradicted nor in any wise discredited, but, on the other hand, were supported by substantial reasons.

Since the fair market value of the Woodlawn plant and equipment at the time paid into the Connors Steel Company for stock was $225,000, that amount represents cost upon which depreciation

should be computed. *East Market Street Hotel Co.*, 11 B. T. A. 796; *Ben T. Wright, Inc.*, 12 B. T. A. 1149.

Connors was the only witness who expressed an opinion concerning the depreciation of the plant, machinery, and equipment. We think from all the testimony considered together that a reasonable allowance on account of exhaustion, wear and tear of plant, equipment and machinery is at the composite rate of 12 per cent.

The petitioners contend that the use of Connors' process by which cotton ties and hoops were made from steel-shell discards instead of from soft steel resulted in an abnormal condition affecting their capital and their income, since the value of such process could not be reflected in invested capital, a substantial part of their income was attributable thereto and the income could not be reduced by deductions for exhaustion of the value thereof or on account of royalties paid.

This process, however, is not shown by the evidence to have been a secret process available only to the taxpayers. On the other hand, it was a process long known. What Connors did was to apply a well known process used in the softening of steel to the particular kind of steel used by these companies in the manufacture of their products, that is, cotton ties and hoops. Apparently other taxpayers were free to adopt the same process if they had seen fit to do so, and from the testimony we gather that others knew of this particular process for these particular kinds of articles. Undoubtedly these companies were enabled by use of this process to manufacture their products much cheaper than they could have if they had been forced to use soft steel, which would have cost about $20 per ton in excess of the price of the hard-shell discards which could be acquired practically as scrap, but it seems to us that this advantage was in the nature of a benefit to be derived from economy of operation or manufacture, of which, so far as the evidence discloses, any taxpayer wisely directed could have availed itself. We do not consider that a well known process applied by a taxpayer to his particular product, which worked a great economy of operation or manufacture, although he was the first to so apply it, is such an abnormality as is contemplated by the statute unless it be shown that the particular application to the specific articles manufactured was not known to or available to others similarly situated. Shrewd business management and unusually capable men may work many economies in the operation of business, but we do not consider that this factor constitutes an abnormality, either of capital or income. Connors was undoubtedly a very efficient and capable steel man and undoubtedly was able to make profits and conduct his business with greater economy and in a more efficient manner than others not so qualified, and we think that this process of annealing steel which

he applied to cotton ties and hoops manufactured by these companies was no more than an application of his good business judgment in working out and using economies in manufacture. Apparently any other taxpayer in the same business was free to use the same process, which consisted merely of applying a process generally used to the particular products. It is not necessary to discuss here what might have been the effect if the evidence had established that this was a secret process available to only the taxpayers and that other taxpayers in the same or a similar business did not know or were not able to use that method or some equally efficient method. For all we know, the only reason other taxpayers did not use this method is because they had what they considered to be equally efficient methods or were able to acquire soft steel at reasonable prices. No abnormality affecting capital is, in our opinion, shown by the facts relating to the process.

*Decision will be entered under Rule 50.*